```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

LAURIE A. BURNS,

        Plaintiff,

   -v-                                             16-CV-06638

                                                      Decision and Order

SETERUS, INC.,

        Defendant.

     Plaintiff Laurie A. Burns ("plaintiff") brings this action against defendant Seterus, Inc. ("defendant") alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Telephone Consumer Protection Act, 47 U.S.C. §227 et seq. ("TCPA"). Plaintiff claims defendant mailed deceptive, unfair and abusive letters and made telephone calls to plaintiff in attempt to collect a debt related to her mortgage loan that had been discharged in bankruptcy.

     The original complaint was filed on September 19, 2016 and, on November 17, 2016, defendant moved to dismiss the first cause of action in the original complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that plaintiff's first cause of action under the FDCPA fails to allege any facts to show that its communications with plaintiff constituted attempts to collect a debt. On December 2, 2016, plaintiff filed the first amended complaint, prior to any responsive pleading by defendant, in which she alleged that defendant attempted to collect a consumer debt

from her using practices that violated the FDCPA, including communications by letter and an automated telephone dialing system.

## DISCUSSION

**A. The First Amended Complaint.**

The memorandum of law submitted by defendant in support of its motion to dismiss addresses the original complaint only, and it has not moved to dismiss the first amended complaint. Typically, upon the filing of an amended complaint, the prior motion to dismiss is rendered moot and can be denied on that basis. *See Byng v. Campbell,* 2009 WL 152708, at *1 (N.D.N.Y. 2009), citing *Middlebrooks v. Conway*, 2007 WL 2437118, at *5 n. 9 (W.D.N.Y. 2007) ("An amended complaint supercedes a prior complaint"); *Taylor v. Abate*, 1995 WL 362488, at *2 (E.D.N.Y. 1995). In the alternative, however, a court is entitled to "consider[] the merits of the motion in light of the amended complaint." *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 265 (E.D.N.Y. 2014). In this case, plaintiff's memorandum of law submitted in opposition to the motion to dismiss, addresses her first amended complaint. Defendant's reply brief addresses the first amended complaint as well, asserting that the amendments made to the original complaint do not correct its deficiencies. Both parties also agree that defendant's motion to dismiss is not rendered moot by the filing of the first amended complaint. The Court will therefore address the motion to dismiss as to the first amended complaint.

**B.     Factual background**

Here, on December 23, 2005, plaintiff signed a note and mortgage to Precision Financial, Inc., which was secured by her property located at 285 Erath Drive, Rochester, New York (the "subject property"). On April 24, 2009, plaintiff filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of New York, and, on July 21, 2009, the bankruptcy court granted her a discharge under Section 727 of Title 11. Plaintiff occupied the property as her primary residence until July 2009.

In a telephone conversation in February 2014, a representative of defendant, Seterus, Inc., advised plaintiff that defendant had acquired the servicing rights to her mortgage. "During that call, [p]laintiff informed the representative that she had filed bankruptcy in 2009, that she had discharged her obligation on the subject debt, and that she was surrendering the mortgaged premises." First amended complaint, ¶ 37. She further requested that defendant cease all communication with her. Plaintiff alleges that from February 2014 to the present, defendant continued to initiate multiple telephone calls by using an automated telephone dialing system or by transmitting an artificial or prerecorded voice message to her. "In . . . virtually every telephone conversation that [defendant] had with [p]laintiff during that period, [defendant] attempted to persuade [p]laintiff to apply to reinstate her mortgage." First amended complaint, ¶ 40. Plaintiff

3

further alleges that defendant mailed "unsolicited forms" in attempt to persuade her to reinstate her mortgage and recommended that plaintiff transfer her property to the mortgage holder by executing a deed in lieu of foreclosure. First amended complaint, ¶¶ 41-42.

**C.    Defendant's Motion to Dismiss the First Cause of Action**.

Rule 12(b)(6) provides for dismissal of a complaint where a plaintiff has "fail[ed] to state a claim upon which relief can be granted."  In determining whether a complaint states a claim, the Court construes the complaint liberally, accepts all factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007).  While the complaint need not include detailed factual allegations, the "grounds of [plaintiff's] entitlement to relief" must be shown. *Bell Atlantic Corp. v. Twombly*, __ U.S.__, 127 S.Ct. 1955, 1964-1965 (2007).  In deciding such a motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  "A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed 'merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof.'" *Valle v. Bendett & McHugh*, P.C., 2015 WL 5797023, at *7 (D. Conn. 2015), quoting *Ryder Energy Distribution*

4

*Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984).

The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Here, the exhibits to the first amended complaint indicate that plaintiff's "debt" is alleged to be a hazard insurance policy purchased by defendant for the subject property in 2014. Defendant concedes that plaintiff's bankruptcy "discharge[d] her obligation to pay the insurance premiums" but asserts that its hazard insurance notices "were not attempts to demand payment from [p]laintiff" and, therefore, "are not subject to the FDCPA." Defendant's reply memorandum, p. 2.

The hazard insurance notices sent by defendant to plaintiff are attached as exhibits to the first amended complaint. Each notice advises plaintiff, essentially, that hazard insurance has been purchased by defendant at plaintiff's expense. By letter dated February 12, 2016, defendant informed plaintiff as follows:

> At your expense, we have purchased a renewal insurance policy to protect our interest in the property. The premium cost for purchasing this insurance is shown on the attached policy declaration. You are solely responsible for the repayment of this cost. The premium for the attached policy may be charged to your escrow account. If you do not have an escrow account, we may establish an escrow account in accordance with the terms of your loan documents unless prohibited by applicable state law.

5

First amended complaint, Exhibit C. In smaller print at the bottom of this notice is the following disclosure statement:

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS [DEFENDANT] SOMETIMES ACTS AS A DEBT COLLECTOR. [DEFENDANT] IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THE PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT.

First amended complaint, Exhibit C.

The Second Circuit has held that the terms of the FDCPA must be interpreted liberally "to achieve [its] underlying Congressional purpose," which is to "'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016), quoting 15 U.S.C. § 1692(e). Defendant contends that the hazard insurance letters sent to plaintiff did not constitute an attempt to collect a "debt" but were necessary notices to satisfy its obligation under RESPA, 12 U.S.C. §§ 2601, *et seq.*, which requires a servicer of a federally-related mortgage to obtain force-placed hazard insurance if there is "a reasonable basis to believe the borrower has failed

6

to comply with the loan contracts requirements to maintain property insurance." 12 U.S.C. § 2605(k)(1)(a).

The Court notes that apart from demanding proof of insurance from plaintiff and advising her that she was "solely responsible for repayment of the cost" of the insurance policy obtained by defendant, there was no demand for payment, discussion of a deadline to pay, threats in the event of nonpayment, or mention of plaintiff's underlying mortgage debt. The letters further informed plaintiff that the insurance policy obtained by defendant could be "cancelled at any time by providing [defendant] acceptable proof of insurance." First amended complaint, Exhibit C.

The Court therefore concludes that the letters alone, informing plaintiff that the hazard insurance policy on her property has expired, demanding proof of insurance, and informing her that defendant had purchased hazard insurance for the property on her behalf, and ultimately at her expense, did fall not "within the ambit of the FDCPA." *Dyer v. Select Portfolio Servicing, Inc.*, 108 F.Supp.3d 1278, 1282 (M.D. Fla. 2015)(letter concerning hazard insurance, which did not reference debt, reflect that debt was past due, demand payment, or threaten consequences, did not fall under FDCPA).

Notwithstanding the statement informing plaintiff that she was responsible for the cost of the insurance policy, plaintiff has failed to alleged facts sufficient to demonstrate that the hazard insurance letters were sent in connection with the collection of a

7

debt. The context of the notices, which fail to include any statement of by when, how, and to whom the alleged debt must be paid, demonstrate that they were not sent in connection with the collection of any debt. Moreover, contrary to plaintiff's contention, the Court finds the bankruptcy disclaimer contained in the letters to be sufficiently prominent and unambiguous to put even the least sophisticated consumer on notice that she would not be personally responsible for the alleged debt.

The Court further finds that plaintiff has failed to state a claim under the FDCPA stemming from an unspecified number of telephone calls that she received from defendant. The first cause of action alleges only that the "calls were annoying and harassing" and fails to assert facts sufficient to demonstrate that defendant, with the intent to annoy, abuse, or harass, was attempting to collect a debt during those calls. Consequently, the first cause of action does not survive on this basis and is, accordingly, dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the first of cause of action (Docket No. 7) in the first amended complaint (Docket No. 8) is granted.

**ALL OF THE ABOVE IS SO ORDERED.**

S/ MICHAEL A. TELESCA
HONORABLE MICHAEL A. TELESCA
UNITED STATES DISTRICT JUDGE

DATE:   January 11, 2017
        Rochester, New York